1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

K.H.B. by and through his father, K.D.B.,
individually, and on behalf of similarly
situated individuals,

        Plaintiff,

  v.

UNITEDHEALTHCARE INSURANCE
COMPANY,

        Defendant.

_____/

No. C 18-04175 WHA

**ORDER GRANTING
DEFENDANT'S MOTION
TO TRANSFER AND
DENYING MOTION
TO STAY PROCEEDINGS**

**INTRODUCTION**

      In this second-filed putative nationwide class action to recover health benefits under an

ERISA plan, defendant insurer moves to transfer venue to the District of Utah under either the

first-to-file rule or pursuant to 28 U.S.C. § 1404(a). Alternatively, defendant moves to stay this

action. The motions present a battle between competing putative nationwide class actions that

should be coordinated by a single judge. For the reasons set forth below, the motion to transfer

is **GRANTED** and the motion to stay is **DENIED**.

**STATEMENT**

      In May 2017, two beneficiaries of a health benefits plan filed a putative nationwide

class action lawsuit, *Amy G. and Gary G. v. United HealthCare and United Behavioral Health*,

No. 2:17-cv-00413-DN-EJF, in the United States District Court for the District of Utah before

Judge David Nuffer. In *Amy G.*, plaintiffs' minor son received treatment for his mental health condition at a wilderness therapy program, but United Healthcare Insurance Company and United Behavioral Health, which administered the plaintiffs' employer-provided group health benefits plan, denied coverage based on an exclusion from coverage for experimental, investigational, or unproven treatment. The Utah case seeks to pursue a putative nationwide class of ERISA beneficiaries whose claims for payment of mental health services at wilderness programs have been wrongfully denied based on the defendants' systematic and erroneous application of the exclusion for experimental, investigational, or unproven treatment. Class certification discovery concluded on September 14, and the motion for class certification is due on October 12 (Case No. 17-00413, Dkt. No. 2 ¶¶ 2–3, 16, 19–41; Br., Exh. 2 at 2).[*]

The instant action is a competing proposed nationwide class action brought here in the Northern District of California by a different plaintiff with a different lawyer but also against United Healthcare over the same problem. Plaintiff K.H.B. was enrolled in his parent's employer-sponsored health insurance plan, which UHC underwrote and administered. Like the plaintiffs' son in the Utah action, K.H.B. received mental health treatment at a wilderness therapy program located in Utah. Plaintiff received, opposed, and appealed a denial of coverage letter sent from and to the post office box of UHC's affiliate UBH in Utah. Plaintiff asserts several ERISA claims under the theory that the program provided him with "medically necessary treatment" covered by his plan (Amd. Compl. ¶¶ 1, 4–7, 12–13, Exhs. C, D).

Plaintiff originally brought these claims on behalf of all wrongfully denied ERISA beneficiaries who had sought coverage for treatment at a wilderness mental healthcare program. But after defendant filed this motion to transfer venue, plaintiff amended his class definition via an amended complaint to bring these claims on behalf of the same putative nationwide class of ERISA beneficiaries, but only those who were not denied coverage on the basis of an exclusion or the "medically necessary" prerequisite (Compl. ¶ 58; Amd. Compl. ¶ 60).

---

[*] The Court judicially notices the complaint filed in *Amy G.* and the amended scheduling order because district courts "may take notice of proceedings in other courts . . . if those proceedings have a direct relation to matters at issue." *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992).

Defendant UHC now moves to transfer venue to the District of Utah under either the fist-to-file rule or 28 U.S.C. § 1404(a). Alternatively, UHC moves to stay this action. Plaintiff opposes. This order follows briefing, oral argument, and supplemental briefing.

## ANALYSIS

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Courts undertake a two-step analysis to determine whether transfer is proper. *First*, courts determine whether the action could have been brought in the target district. *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960). The second step consists of an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). A district court "has discretion to adjudicate motions for transfer according to an individualized case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (quotations omitted). This order finds sufficient basis to transfer this action to the District of Utah without the need to address whether the principles of the first-to-file rule also provide independent authority to do so.

### 1. VENUE WOULD HAVE BEEN PROPER IN UTAH.

A forum where the action "might have been brought" is one which would have been proper for both venue and service of process. *Hoffman v. Blaski*, 363 U.S. 335, 343–44 (1960). An ERISA action may be brought "in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides." 29 U.S.C. § 1132(e)(2). Service of process is not disputed here. Although the Court of Appeals for the Tenth Circuit has only expressly construed "where a defendant resides" as "broad," for purposes of ERISA "courts have followed the broad application of the antitrust and copyright venue provisions where a defendant is deemed to be 'found' in any district in which personal jurisdiction could be obtained over it." *Palka v. Theodore M. Hylwa, M.D., Inc.*, No. 85-2480, 1986 WL 22380, at *2 (D. Kan. Sept. 3, 1986) (citing *Varsic v. United States Dist. Court*, 607 F.2d 245, 247–48

1   (9th Cir. 1979)); *see also IHC Health Servs., Inc. v. Eskaton Props., Inc.*, No. 16–CV–3–DN,

2   2016 WL 4769342, at *5 n.70 (D. Utah Sept. 13, 2016) (collecting cases).

3          The Tenth Circuit employs a three-part inquiry to determine the propriety of the exercise

4   of specific personal jurisdiction over a non-resident defendant:  (1) whether the defendant

5   purposefully availed itself of the privilege of conducting activities or consummating a

6   transaction in the forum state; (2) whether the plaintiff's injury arose from those purposefully

7   directed activities; and (3) whether exercising jurisdiction would offend traditional notions of

8   fair play and substantial justice. *Newsome v. Gallacher*, 722 F.3d 1257, 1264 (10th Cir. 2013).

9          UHC points to sufficient evidence to demonstrate that it would have been subject to

10  specific personal jurisdiction and, thus, venue would have been proper in the District of Utah.

11  *First,* the services at issue — plaintiff's mental health treatment at Elements Wilderness

12  Program — were performed in Utah.  *Second,* defendant, who availed itself of the forum's

13  post office services, informed plaintiff of its determination that coverage was not available for

14  services performed at wilderness programs in a letter sent by defendant from Salt Lake City,

15  Utah.  *Third,* plaintiff addressed his appeal of that decision to defendant in Salt Lake City.

16  *Fourth,* defendant sent a letter from Salt Lake City notifying plaintiff that the initial

17  coverage decision was upheld on appeal (Amd. Compl., Exh. C at 2, 6, 15; Exh. D at 2).

18  Thus, defendant's purposeful conduct within the proposed forum was the very same conduct

19  from which this action arises — denial of coverage.  When questioned during oral argument

20  whether UHC maintains offices in Utah, defense counsel responded that she did not know.

21  Nonetheless, it does not offend the notions of fair play for a court to exert specific jurisdiction

22  over this kind of conduct purposely directed and addressed from the forum state.  Therefore,

23  defendant's conduct "may be found" in the District of Utah and this action "might have been

24  brought" there.

25          **2.    CONVENIENCE AND THE INTEREST OF JUSTICE FAVOR TRANSFER.**

26          The second step of a Section 1404(a) analysis considers the convenience of the parties,

27  the convenience of the witnesses, and the interest of justice, as understood through the

28  following non-exhaustive list of factors:  (1) the location where the relevant events occurred;

(2) the forum that is most familiar with the governing law; (3) plaintiff's choice of forum;

(4) the respective parties' contacts with the forum; (5) the contacts relating to plaintiff's cause

of action in the chosen forum; (6) the differences in costs of litigation in the two fora; (7) the

availability of compulsory process to compel attendance of unwilling non-party witnesses;

(8) the ease of access to sources of proof; and (9) the public policy of the forum state.

*Jones*, 211 F.3d at 498–99, 499 n.21. No single factor is dispositive. *Stewart*, 487 U.S. at 29.

As discussed below, this order finds that convenience and the interest of justice favor transfer.

### A.     The Interest of Justice Favors Transfer.

One factor that courts frequently consider in determining the interests of justice — and

one that this order focuses on here — "is the desire to avoid multiplicity of litigation resulting

from a single transaction or event." 15 Charles Alan Wright & Arthur R. Miller, *Fed. Prac. &

Proc.* § 3854 (4th ed. 2018). Indeed, "the purpose of [Section 1404(a)] is to prevent the waste

of time, energy and money and to protect litigants, witnesses and the public against unnecessary

inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964). The Supreme

Court has warned:

> To permit a situation in which two cases involving
> precisely the same issues are simultaneously pending in
> different District Courts leads to the wastefulness of time,
> energy and money that [Section] 1404(a) was designed to
> prevent. Moreover, such a situation is conducive to a race
> of diligence among litigants for a trial in the District Court
> each prefers.

*Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960). The pendency of the Utah action

weighs heavily in favor of transfer.

This is a battle between competing proposed nationwide class actions, both of which

seek to resolve the extent to which wilderness therapy programs were (and are) covered under

the respective plaintiffs' health benefits plans administered by UHC. *First,* the Utah action is

more procedurally advanced than this action. Since it was filed over a year before this action,

the parties have already engaged in class certification discovery. The motion for class

certification there is due on October 12.

*Second,* both cases seek to represent nationwide classes of UHC beneficiaries who enrolled in similar health benefits plans and sought treatment in wilderness therapy programs. Though the class definitions in both actions are nearly identical in scope, plaintiff makes much of the fact that the proposed class in the Utah action includes only those beneficiaries who were denied coverage on the basis of an exclusion, whereas the proposed class here would expressly except from its definition those beneficiaries who were denied coverage on the basis of an exclusion. This is hair-splitting. A judge is not bound by any proposed class definition. In any case, one judge should supervise the extent to which, if at all, any nationwide class against their policy is workable under Rule 23.

*Third,* the legal and factual issues in both actions overlap and are virtually identical. The central question plaintiff ultimately asks this Court to resolve — whether plaintiff's UHC policy covers mental health services performed at a wilderness therapy treatment program — shares common factual underpinnings with the Utah action. Plaintiff contends that defendant waived its right to assert that plaintiff's wilderness treatment was not medically necessary or should have been denied as an exclusion because a "plan administrator may not fail to give a reason for a benefits denial during the administrative process and then raise that reason for the first time . . . in federal court." *Harlick v. Blue Shield of Cal.*, 686 F.3d 699, 719–20 (9th Cir. 2012). Although defendant's brief did not expressly dispute this assertion, during oral argument counsel contended that it is unclear whether defendant actually waived that right when in its initial denial of coverage letter, defendant specified that "[a]s described in the Exclusions section of your Certificate of Coverage . . . coverage is not available" (Amd. Compl., Exh. C). Additionally, "the insured has the burden of showing that a covered loss has occurred, while the insurer has the burden of showing that a loss falls within an exclusionary clause of the policy." *Rasenack ex rel. Tribolet v. AIG Life Ins. Co.*, 585 F.3d 1311, 1319 (10th Cir. 2009). Thus, the Utah action will necessarily address whether treatment at a wilderness therapy program was covered, regardless of the additional dispute over the propriety of the exclusion the Utah parties will litigate. Even if not identical, these actions involve common issues of law and fact.

**B.      Convenience of the Parties and Witnesses Favors Transfer.**

*First,* "[i]f the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter, [plaintiff's] choice [of forum] is entitled to only minimal consideration." *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987). "[T]he most convenient forum is frequently the place where the cause of action arose." *Van Dusen*, 376 U.S. at 628. Here, the treatment facility, claims handling decisions, and the majority of other conduct at issue in this action occurred in the District of Utah. While plaintiff alleges that his benefits plan was issued, delivered, and breached in this district, California has no greater stake in this nationwide class action lawsuit than any other state. *Lou*, 834 F.2d at 739 ("when an individual brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight").

*Second,* our district court does not have the power to compel non-party witnesses located outside of California to testify at trial. Transfer will facilitate UHC's ability to compel plaintiff's wilderness therapy employees in Utah to appear at trial while plaintiff will still be able to compel the UHC current and former employees involved with his denial of coverage.

*Third,* the convenience of potential party witnesses favors transferring this action to Utah. Even if the District of Utah ultimately denies consolidation, a transfer benefits the UHC representatives, UHC former employees, and expert witnesses whose depositions both plaintiffs can coordinate during the discovery process. Additionally, although slight in the convenience calculus, transfer will facilitate coordinating the production of many of the same documents.

*Fourth,* while the two fora are equally adept to resolve plaintiff's ERISA issues, including under supplemental jurisdiction plaintiff's California Mental Health Parity Act claim, Judge Nuffer is already familiar with the facts underlying this dispute and has already facilitated class certification discovery. Transfer thus promotes efficiency.

*In sum,* transferring this action to the District of Utah will be more efficient and convenient for the courts, the witnesses, and the parties, particularly because one judge should assess the upcoming Rule 23 class certification motion for both of these similar actions predicated on similar sets of underlying facts. The possibility of consolidation of the actions, or coordination of discovery and other procedures, promotes the Section 1404(a) goals of

1   conserving time, energy, and money, and avoids the risk of inconsistent judgments.

2   Because the majority of factors favor transfer to Utah, doing so does more than shift

3   inconvenience.  The Utah judge has the problem at hand.  It would be counterproductive

4   and potentially embarrassing for the undersigned judge to second-guess his decisions from afar.

5   **3.     TRANSFER, STAY, OR DISMISSAL.**

6          In the alternative, defendant requests this action be stayed pursuant to the first-to-file

7   rule.  Although, this order does not reach whether the first-to-file rule applies under these

8   circumstances, for several reasons, a transfer would best serve the objectives of efficiency and

9   avoiding inconsistent judgments.  *First,* if this action is transferred rather than stayed, the claims

10  for improper denial of coverage for wilderness therapy programs, which are subsumed by the

11  Utah plaintiffs' prima facie case, potentially could be consolidated and tried together rather than

12  before to two juries.  *Second,* if consolidation is not possible, coordinating the actions before one

13  tribunal can nevertheless help ensure against inconsistent interlocutory rulings.  Although a stay

14  would afford this Court the benefit of Judge Nuffer's sound resolution of the Utah action, that

15  decision would not bind this our district court.  Nor would principles of res judicata necessarily

16  bar the claims of members of plaintiff's proposed class who were excluded from the Utah class.

17  *Third,* there is a possibility that at least some of the proposed class members will not be

18  represented in the Utah action.  Therefore, dismissal would be improper.  *Alltrade, Inc. v.*

19  *Uniweld Prods., Inc.* 946 F.2d 622, 628 (9th Cir. 1991).  *Fourth,* stays are disfavored where,

20  as here, plaintiff seeks an award of injunctive relief against ongoing harm.  *Lockyer v. Mirant*

21  *Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005).

22         Allowing this action, which plaintiff urges is based only upon the coverage grant in his

23  benefits plan, to proceed independently in a different forum despite the substantial overlap of

24  issues with the Utah action presents a significant possibility of inconsistent results.  Centralized

25  adjudication of these factually similar actions will avoid the possibility of any inconsistent

26  judgments and facilitate efficient navigation of discovery and procedural issues.  Accordingly,

27  this order finds that the totality of the circumstances and reasons of equity counsel in favor of

28  transferring this action to the District of Utah where venue is proper and a similar, first-filed

1  action is already underway.  The motion to transfer pursuant to Section 1404(a) is **GRANTED**.

2  The motion to stay is **DENIED.**

3                                                    **CONCLUSION**

4          For the foregoing reasons, the defendant's motion to transfer is **GRANTED** and the motion

5  to stay is **DENIED**.  The Clerk shall **TRANSFER** this action to the United States District Court for

6  the District of Utah.

7

8          **IT IS SO ORDERED.**

9

10  Dated:  October 10, 2018.

                                    _____
11                                                   WILLIAM ALSUP
                                    UNITED STATES DISTRICT JUDGE